IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDRE DOUGLAS,                    :        CIVIL ACTION_____
_____Petitioner        :
                                  :
        VS.                       :
                                  :
GILBERT A. WALTERS, et. al.,      :
        Respondents               :        NO. 02-CV-2862

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

        Currently before the Court is a petition for Writ of
Habeas Corpus filed, pursuant to 28 U.S.C. § 2254, by a petitioner
incarcerated in the State Correctional Institution at Mercer,
Pennsylvania.  For the reasons which follow, the Court recommends
that the petition be denied and dismissed in part, and that an
evidentiary hearing be granted to resolve remaining issues.

I. PROCEDURAL HISTORY

        Following an April 28, 1994 jury trial in the
Philadelphia Court of Common Pleas, petitioner was convicted of
robbery, criminal conspiracy, and possession of an instrument of
crime.  The charges arose out of the gunpoint robbery of victims
Mr. and Mrs. Lucas by petitioner and his co-conspirator Jeffrey
Reese outside a Denny's Restaurant in Philadelphia.  The Honorable
Thomas D. Watkins subsequently sentenced petitioner to a term of
twenty to forty years imprisonment.  Through newly appointed
counsel, petitioner filed a direct appeal raising the following

issues for review:

1.  Whether the lower court erred when it refused to
    suppress the pre-trial photographic identification
    of Mr. Douglas since the identification was made at
    a post-arrest photo array which was conduced
    without counsel being present on his behalf;

2.  Whether prior counsel was ineffective in failing to
    argue that the pre-trial photographic
    identification of Mr. Douglas by Mr. Lucas was
    defective in that Mr. Lucas knew that his wife had
    previously chosen a photo from the same array shown
    to him;

3.  Whether prior counsel was ineffective in not
    arguing that the lower court failed to state
    adequate reason for deviating from the sentencing
    guidelines;

4.  Whether the lower court abused its discretion when
    it imposed harsh and excessive sentences on Mr.
    Douglas.

The Superior Court of Pennsylvania affirmed the lower court's

decision on November 20, 1995, and the Supreme Court of

Pennsylvania denied allowance of appeal on June 26, 1996.

Petitioner thereafter filed for collateral relief

pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. § 9541, et seq., setting forth multiple alleged

errors:

1.  Whether the PCRA should have granted his request to
    proceed pro se;

2.  Whether the court improperly denied his request to
    proceed pro se during his direct appeal;

3.  Whether the trial court erred in refusing to permit
    trial counsel to withdraw from petitioner's case;

4.  Whether trial counsel was ineffective for failing

2

to move the court to allow petitioner to proceed
pro se;

5.    Whether the trial judge should have recused himself
      or, in the alternative, whether trial counsel was
      ineffective for failing to seek recusal;

6.    Whether trial counsel obstructed petitioner's
      constitutional right to testify;

7.    Whether trial counsel was ineffective for failing
      to call Bryant Anderson as a witness;

8.    Whether trial counsel was ineffective for failing
      to inform him of his possible sentence prior to his
      rejection of the Commonwealth's guilty plea offer;

9.    Whether appellate and PCRA counsel were ineffective
      in failing to raise the claims set out above.

The PCRA court denied this petition on June 20, 1998.  The Superior

Court of Pennsylvania affirmed the PCRA ruling in August of 2001.

Subsequently, the Pennsylvania Supreme Court again denied allocatur

on April 3, 2002.

        Petitioner filed the instant pro se Petition for Writ of

Habeas Corpus on May 13, 2002, alleging the following claims:

1.    Trial court error in failing to allow withdrawal of trial
      counsel;

2.    Trial counsel ineffectiveness for failing to:

      a.    Request trial judge recusal, or in turn, trial
            judge error in failing to recuse himself;

      b.    File a timely motion to the trial court to allow
            petitioner to proceed pro se;

      c.    Properly advise petitioner during sentencing;

      d.    Call Bryant Anderson as a witness; and

3.    Appellate counsel ineffectiveness for failing to raise

3

any claims herein.

The Commonwealth responds that all of these claims are procedurally
defaulted and, thus, not cognizable for our review.  With the
opposing arguments in mind, we now turn to a discussion of the
petition before us.

II.  STANDARD OF REVIEW

Under the current version of the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA"), an application for
writ of habeas corpus from a state court judgment bears a
significant burden.  Section 104 of the AEDPA imparts a presumption
of correctness to the state court's determination of factual issues
— a presumption that petitioner can only rebut by clear and
convincing evidence.  28 U.S.C. § 2254(e)(1) (1994).  The statute
also grants significant deference to legal conclusions announced by
the state court, as follows:

> An application for a writ of habeas corpus on behalf of
> a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court
> proceedings unless that adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court, in the case of Williams

4

v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), interpreted the standards established by the AEDPA regarding the deference to be accorded to state court legal decisions, and more clearly defined the two-part analysis set forth in the statute. Williams, 529 U.S. at 404-405.  Under the first part of the review, the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States."  As defined by Justice O'Connor, writing for the majority of the Court on this issue, a state court decision can be contrary to Supreme Court precedent in two ways: 1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]."  Id.  She explained, however, that this "contrary to" clause does not encompass the "run-of-the-mill state-court decisions" applying the correct legal rule from Supreme Court cases to the facts of the prisoner's case."  Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1).  It found that a state court decision can involve an unreasonable application of Supreme Court precedent:  1) "if the state court identifies the correct governing legal rule from the

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or 2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." Williams, 529 U.S. at 407-408. The Court specified, however, that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410.

III.  DISCUSSION

    A.  Procedural Default

        Respondent's primary opposition to petitioner's habeas submission alleges that all but one of petitioner's claims[1] suffer from some form of procedural default and, thereby, cannot provide the basis for federal review or habeas relief.  The procedural default barrier, in the context of habeas corpus, precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729, 111

---

[1] Respondent does not argue default for petitioner's claim that trial counsel was ineffective for failure to file a timely motion to permit petitioner to proceed pro se.

S. Ct. 2546, 2553, <u>reh'g denied</u>, 501 U.S. 1277, 112 S. Ct. 27
(1991). "In the context of direct review of a state court
judgment, the independent and adequate state ground doctrine is
jurisdictional. . . [b]ecause this Court has no power to review a
state law determination that is sufficient to support the
judgment." <u>Id</u>. This rule applies regardless of whether the state
law relied upon is substantive or procedural, <u>id</u>., and rests in
part on respect for the integrity of procedures "employed by a
coordinate jurisdiction within the federal system." <u>Wainwright v.
Sykes</u>, 433 U.S. 72, 88, 97 S. Ct. 2497, 2507, <u>reh'g denied</u>, 434 U.S.
880, 98 S. Ct. 241 (1977). Although the issue of procedural
default is best addressed by the state courts in the first
instance, a federal court may dismiss a petition as procedurally
barred if state law would unambiguously deem it defaulted. <u>Carter
v. Vaughn</u>, 62 F.3d 591, 595 (3d Cir. 1995).

Respondent contends that petitioner's claims suffer from
one of two forms of procedural default. First, it asserts that
because petitioner has never presented several of his claims to the
state courts and could not do so now, they are defaulted. Second,
respondent argues that some of petitioner's claims were found
waived by the state courts, thereby barring this Court's review of
their merits. We discuss each form of default in turn.

1.  <u>Claims Never Before Raised to the State Courts</u>

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999).  In other words, a petitioner must invoke "one complete round of the State's established review process." <u>Id</u>. at 845.  In the case of an unexhausted petition, the federal courts should dismiss it without prejudice, otherwise, they risk depriving the state courts of the "opportunity to correct their own errors, if any."  <u>Toulson v. Beyer</u>, 987 F.2d 984, 989 (3d Cir. 1993). However, "[i]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ." <u>Coleman</u>, 501 U.S. at 735 n.1; <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999).  The logic underlying this rule is that "[i]n the absence of [the procedural default doctrine] in federal habeas, habeas petitioners would be able to avoid the exhaustion doctrine by defaulting their federal claims in state court." <u>Coleman</u>, 501 U.S. at 732.

Respondent argues that two of petitioner's claims were never presented for review before any Pennsylvania state court of appellate jurisdiction: (1) trial court error in failing to allow withdrawal of trial counsel; and (2) trial counsel ineffectiveness

for failure to request trial judge recusal or alternatively trial judge error in failing to recuse himself.  Our own review of the state court rulings, however, compels us to disagree.[2]  With respect to the first claim, the Pennsylvania Superior Court specifically addressed the merits to find that the trial court did not err in refusing to allow trial counsel to withdraw.  <u>See</u> Superior Court Opinion (2001), at 4.  Likewise, the Superior Court reached the merits of and denied petitioner's second claim involving trial counsel ineffectiveness for failure to request trial judge recusal or alternatively trial judge error in failing to recuse himself.[3]  <u>Id</u>. at 6.  As we find that petitioner has fairly presented these claims and the state courts have taken the opportunity to address them, we deem them exhausted and, in turn, not defaulted.

  2.  <u>Waived Claims</u>

   Respondent's second procedural default attack on the pending habeas petition contends that two of petitioner's claims have been deemed "waived" by the Pennsylvania Superior Court, thereby barring our consideration of their merits.  Under the PCRA, a claim is waived if "the petitioner could have raised it but

---

   [2] While it seems that petitioner actually waived these claims since he could have raised them on direct appeal, the PCRA court made no mention of waiver with respect to either of them.  As waiver is a matter of state law, we must defer to this decision.

   [3] Respondent failed to specify exactly what form of default plagues the claim, and, in fact, offered no argument bolstering a claim of default.

failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding."  42 Pa.C.S.A. § 9544(b) (1998); Commonwealth v. Lark, 698 A.2d 43, 46 (Pa. 1997).  A claim of ineffectiveness of counsel "must be raised at the earliest stage in the proceedings at which the allegedly ineffective counsel is no longer representing the claimant." Commonwealth v. Griffin, 644 A.2d 1167, 1170 (Pa. Super. 1994).  If a state court finds a claim to be waived, it thereafter becomes procedurally defaulted, thus barring federal habeas review.  Werts v. Vaughn, 228 F.3d 178, 192 n. 9 (3d Cir. 2000), cert. denied, 532 U.S. 980, 121 S. Ct. 1621 (2001) (citing Lambert v. Blackwell, 134 F.3d 506, 518 (3d Cir. 1997), cert. denied, 532 U.S. 919, 121 S. Ct. 1353 (2001)).

Both petitioner's claim of (1) ineffective assistance of trial counsel for failure properly advise petitioner during sentencing and (2) ineffective assistance of trial counsel for failure to present Bryant Anderson as a witness suffer from this precise type of procedural default.  The Superior Court of Pennsylvania found that these claims were waived since petitioner had new counsel on direct appeal, but yet failed to raise these arguments until PCRA proceedings.  See Superior Court Opinion (2001), at 7.  As petitioner failed to bring the claims at the earliest possible time, they are waived in the state courts and procedurally defaulted for our purposes.

    3.  Exceptions to Procedural Default

        These findings of procedural default, however, do not
automatically foreclose all further federal review.  To survive
procedural default in the federal courts, the petitioner must
either "demonstrate cause for the default and actual prejudice as
a result of the alleged violation of federal law, or demonstrate
that failure to consider the claims will result in a fundamental
miscarriage of justice."  Coleman, 501 U.S. at 750.          Under
the fundamental miscarriage of justice exception, a petitioner must
demonstrate that a constitutional violation probably resulted in
the conviction of an innocent defendant.  Murray v. Carrier, 477
U.S. 478, 496, 106 S. Ct. 2639, 2645 (1986).  A petitioner meets
the  fundamental  miscarriage  of  justice  exception  if  he
"establish[es] that under the probative evidence he has a colorable
claim of factual innocence."  Sawyer v. Whitley, 505 U.S. 333, 339,
112 S. Ct. 2514, 2519 (1992), reh'g denied, 505 U.S. 1244, 113 S.
Ct. 21 (1992) (quoting Kuhlmann v. Wilson, 477 U.S. 436, 454, 106
S. Ct. 2616, 2627 (1986)).  A fundamental miscarriage of justice
occurs only "'in an extraordinary case, where a constitutional
violation has probably resulted in the conviction of one is
actually innocent.'"  Schlup v. Delo, 513 U.S. 298, 321, 115 S. Ct.
851, 864 (1995) (quoting Murray, 477 U.S. at 496).  To establish
the requisite probability, it is not enough to show that a
reasonable doubt is conceivable.  Bastien v. Dragovich, 128 F.

11

Supp.2d 204, 211 (M.D. Pa. 2000). Rather, the petitioner must show that it is more likely than not that no reasonable jury would have convicted him. Schlup, 513 U.S. at 327; Glass v. Vaughn, 65 F.3d 13, 16 (3d Cir. 1995), cert. denied, 516 U.S. 1151, 116 S. Ct. 1027 (1996). This showing requires "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324; see also Cristin v. Brennan, 281 F.3d 404, 420-421 (3d Cir. 2002), cert. denied, 123 S. Ct. 195 (2002).

The cause and prejudice exception embraces two separate elements. A demonstration of cause sufficient to survive dismissal "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.), cert. denied, 504 U.S. 944, 112 S. Ct. 2283 (1992) (citing Murray, 477 U.S. at 488); see also Jones v. Frank, 28 F. Supp.2d 956, 963 (E.D. Pa. 1998), aff'd, 202 F.3d 254 (3d Cir. 1999), cert. denied, 529 U.S. 1088, 120 S. Ct. 1720 (2000). Once cause is shown, the petitioner bears the additional burden of proving some resulting prejudice, i.e. that errors at trial "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray, 477 U.S. at 494 (quoting

<u>United States v. Frady</u>, 456 U.S. 152, 170, 122 S. Ct. 1584, 1596,
<u>reh'g denied</u>, 456 U.S. 1001, 102 S. Ct. 2287 (1982)).

      In the matter before us, petitioner makes no claim of a
fundamental miscarriage of justice.  Indeed, he does not even aver
his actual innocence.  Thus, procedural default cannot be excused
on this ground.

      Petitioner, however, does attempt to invoke the second
exception by asserting an overarching claim of ineffective
assistance of direct appeal counsel for failure to raise any claims
found in petitioner's habeas action.  A claim of appellate counsel
ineffectiveness can constitute cause sufficient to excuse
procedural default so long as that claim in itself is not
defaulted.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-454, 120 S. Ct.
1587, 1591-1592 (2000); <u>Werts v. Vaughn</u>, 228 F.3d 178, 192-193 (3d
Cir. 2000), <u>cert. denied</u>, 532 U.S. 980, 121 S. Ct. 1621 (2001).

      Petitioner first presented his general claim of
ineffective assistance of appellate counsel for failure to preserve
his various other claims at PCRA proceedings -- his first available
opportunity to do so.  Since petitioner argued and the Superior
Court directly addressed this precise claim of appellate counsel
ineffectiveness during state court proceedings, the claim is not
defaulted and could provide grounds to excuse the procedural
default provided it has merit.  The PCRA court, however, blanketly
dismissed this claim without any discussion of its merit, leaving

13

this Court with little guidance as to its proper resolution.[4]

In order to determine whether petitioner's allegation of ineffective assistance of counsel can constitute cause sufficient to excuse his procedural default, then, we must perform our own legal analysis.  It is well-established that appellate counsel cannot be ineffective for failing to raise a meritless claim.  See Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2066, reh'g denied, 467 U.S. 1267, 104 S. Ct. 3562 (1984); Holland v. Horn, 150 F. Supp.2d 706, 730 (E.D. Pa. 2001).  Consequently, to ascertain whether petitioner has a viable claim of ineffective assistance of appellate counsel, the Court must determine whether the underlying defaulted claims themselves had merit.  This logic brings us full circle and effectively requires us to address the merits of issues which would otherwise be dismissed outright on procedural grounds.  For ease of discussion, we reserve our discussion of these issues for the next section.

---

[4] Respondent contends that this claim was too vaguely presented in the state courts as to afford them an opportunity to analyze it on the merits.  In light of our obligation to liberally construe a pro se prisoner's pleadings, Lewis v. Attorney Gen. of U.S., 878 F.2d 714, 722 (3d Cir. 1989), we must disagree.  The state court had before it petitioner's detailed arguments of ineffective assistance of trial counsel.  The appellate counsel claim merely required an analysis of the underlying trial counsel claims and then a determination as to whether these claims had sufficient merit to require that appellate counsel preserve them for review.  Quite contrary to respondent's belief, there is very little additional argument needed to adequately address such a claim.

B.   Discussion of Claims on the Merits

   1.   Ineffective Assistance of Counsel Claims

         Four of petitioner's claims involve allegations that trial counsel's ineffectiveness deprived him of his Sixth Amendment rights.  We address each claim individually.

      a.   Standard for Ineffective Assistance of Counsel

         The Sixth Amendment to the United States Constitution recognizes the right of every criminal defendant to effective assistance of counsel.  U.S. Const., amend. VI.  In the case of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, reh'g denied, 467 U.S. 1267, 104 S. Ct. 3562 (1984), the Supreme Court set forth a two-prong test — both parts of which must be satisfied — by which claims alleging counsel's ineffectiveness are adjudged.  First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness."  Id. at 688.  The Supreme Court has explained that:

> A fair assessment of attorney performance requires that
> every effort be made to eliminate the distorting effects
> of hindsight, to reconstruct the circumstance of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time.  Because of the
> difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct
> falls within the wide range of reasonable professional
> assistance; that is, the defendant must overcome the
> presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."

Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 107, 76 S. Ct. 158, 163-164 (1955)).  A convicted defendant asserting

15

ineffective assistance must, therefore, identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment. Id. at 690. Then, the reviewing court must determine whether, in light of all circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance." Id. Under Pennsylvania law, counsel is not ineffective for failing to raise baseless or frivolous issues. Commonwealth v. Wilson, 393 A.2d 1141, 1143 (Pa. 1978).

Pursuant to the second prong, the defendant must establish that the deficient performance prejudiced the defense. It requires a demonstration that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. Strickland, 466 U.S. at 687. More specifically, the defendant "must show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

b.   Ineffective Assistance of Trial Counsel for
Failure to Properly Advise Petitioner
Regarding His Possible Sentence and Plea
Agreement[5]

Petitioner first claims that trial counsel was ineffective for failing to advise petitioner of his possible sentence and failing to recommend that petitioner accept the Commonwealth's plea offer.  Upon consideration of this claim, we find that petitioner's allegations set forth a colorable constitutional issue which must be further developed by way of an evidentiary hearing.

The plea bargain stage is a critical stage at which the right to effective assistance of counsel attaches.  United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 437-438 (3d Cir. 1982).  "A defendant has the right to make a reasonably informed decision whether to accept a plea offer."  United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  The voluntariness of a guilty plea depends on the adequacy of counsel's legal advice.  Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 316, 322 (1985).  The crucial question, then, is not whether "counsel's advice [was] right or wrong, but. . .whether that advice was within the range of competence demanded

---

[5] As noted above, this claim is procedurally defaulted since it was found to be waived by the state courts.  We discuss it, however, to determine whether petitioner's overarching claim of appellate counsel ineffectiveness for failure to preserve the issue has merit.

Notably, because the state courts found the issue to be waived and never addressed it in the context of the ineffective assistance of appellate counsel claim, there is no substantive discussion by the state.  Consequently, we have no legal conclusion from the state court to which we can apply the Williams deferential standard.

of attorneys in criminal cases." <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 1449 (1970).

Under prevailing Third Circuit jurisprudence, to make a successful claim that trial counsel failed to provide adequate advice to allow a defendant to make an intelligent plea bargaining decision, the defendant bears the burden of proving (a) that counsel's advice was below acceptable professional standards, and (b) prejudice in fact. <u>United States v. Day</u>, 969 F.2d 39, 42-44 (3d Cir. 1992). Pursuant to the first prong, it is well-established that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty. " <u>Day</u>, 969 F.2d at 43. While counsel bears no obligation to "accurately predict what the jury or court might find," he can be required to "give the defendant the tools he needs to make an intelligent decision." <u>Turner v. Calderon</u>, 281 F.3d 851, 881 (9th Cir. 2002). Failure to advise a client of his sentencing exposure upon conviction or providing the wrong information on this subject has been repeatedly found to constitute grounds for ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>United States v. Gordon</u>, 156 F.3d 376, 380 (2d Cir. 1998) (although attorney informed client of full extent of sentencing exposure of 327 months, letter to client concluded that conviction under this indictment would result in a sentence of incarceration of 120 months); <u>Day</u>, 969 F.2d at 43-44 (counsel was

ineffective because he affirmatively misrepresented that Day faced a maximum sentence of eleven years in prison and failed to inform him that he would be classified as a career offender for sentencing); Williams v. United States, Crim. A. No. 00-361-03, 2002 WL 1832828, *2 (E.D. Pa. Aug. 7, 2002) (defendant's allegation that counsel did not inform him about the benefits and disadvantages of pleading guilty and of the sentence he could face under the Sentencing Guidelines stated colorable claim of ineffectiveness); Kates v. United States, 930 F. Supp. 189, 191-192 (E.D. Pa. 1996) (where counsel did not advise the defendant of sentencing exposure if convicted, as compared to term proposed in plea bargain, Sixth Amendment right to effective assistance of counsel was violated).

To satisfy the prejudice prong of the analysis, the defendant must establish that the government actually extended a plea offer, and a reasonable probability that:  (1) the defendant would have accepted the alleged plea offer, (2) the court would have accepted the plea agreement, and (3) a lesser sentence would have resulted. Day, 969 F.2d at 44-45; United States v. Pungitore, 15 F. Supp.2d 705, 733 (E.D. Pa.), certification denied, Civ. A. No. 97-2972, 1998 WL 966085 (E.D. Pa. Sept. 29, 1999).  The petitioner need not prove these factors with absolute certainty or even by a preponderance of the evidence.  Day, 969 F.2d at 45, n. 8.  Rather, he need only show a "reasonable probability" that the

outcome would have been different.  Id.

In the case at bar, petitioner makes a cursory allegation that trial counsel failed to advise him that he faced up to forty years by going to trial, in comparison to the five to ten years he would have received under the guilty plea.  Certainly, if petitioner is correct, counsel's omission would fall below objective professional standards and lay the groundwork for a viable Sixth Amendment claim.  Unfortunately, however, as the state court found the trial counsel ineffectiveness claim waived and never fully addressed the appellate counsel ineffectiveness claim, this Court wants for some sort of evidentiary record on this issue. At no point has trial counsel had the opportunity to testify regarding his version of what occurred between he and his client. Indeed, absent the state court's factual findings on the issue, we have nothing but petitioner's own, uncontradicted allegations upon which to rely.

With respect to the prejudice prong, petitioner asserts that he would have accepted the plea agreement had he been fully informed of the differences between accepting the plea and the possible sentence he could face upon conviction at trial.  Further, petitioner avers, and the respondent acknowledges, that the plea agreement involved a recommendation of a five to ten year sentence in return for a guilty plea -- a term of imprisonment which is in fact shorter than the twenty to forty year sentence petitioner

received.   Again, though, we do not have any evidence of the
government's plea agreement or of any indication as to whether the
court would have accepted the agreement.

Without any findings of fact from the state on these
questions, this Court bears an obligation to conduct an evidentiary
in order to determine the precise circumstances surrounding
petitioner's non-acceptance of the plea agreement.  Such a step is
regrettable, as we prefer that such matters be handled by the state
courts, which stand in a far better position to address such
factual disputes.  Recognizing that petitioner may, indeed, have a
cognizable habeas claim, however, we are bound to develop the
record further to allow a more comprehensive analysis of its
merits.[6]

    c.   Ineffective Assistance of Trial Counsel
Ineffectiveness for Failure to Present Bryant
Anderson as a Witness[7]

Petitioner next argues that trial counsel was ineffective
for failing to present Bryant Anderson as a witness.  Specifically,
he asserts that the key defense strategy at trial was to argue that

---

[6] We are cognizant of the burden on a habeas petitioner to fully develop
his factual claims in state court.  28 U.S.C. § 2254(e)(2).  Where, however,
the petitioner raised the factual basis for his claims of error but did not
receive a full and fair hearing in state court, we have the discretion to
conduct such a hearing.  See United States ex rel. Mangiaracina v. Case, 439
F. Supp. 913, 914 (E.D. Pa. 1977), aff'd, 577 F.2d 730 (3d Cir. 1978).

[7] Like the previous claim, this claim is procedurally defaulted since
it was found to be waived by the state courts.  Again, we discuss it to
determine whether petitioner's claim of appellate counsel ineffectiveness for
failure to preserve the issue has merit.

two other men, Jamal Washington and Bryant Anderson, committed the crimes for which petitioner was on trial. At trial, counsel called Jamal Washington to present this defense. Washington testified that he and Anderson committed the crime. On cross-examination, however, Washington could not explain how petitioner's co-defendant, Reese, came into possession of some of the objects stolen during the crime. Moreover, on rebuttal, the victim testified that Washington did not rob him and maintained that petitioner was the perpetrator.

Counsel did interview Bryant Anderson, who admitted his culpability. Additionally, counsel told petitioner he planned to present Anderson at trial. Nonetheless, Anderson was never called to testify based on counsel's subsequent explanation to petitioner that he did not want to request a continuance to obtain Anderson from the juvenile facility for fear of perturbing the trial judge. Petitioner now argues that he was prejudiced by counsel's failure to put Anderson on the stand since (1) Anderson would have been able to explain how co-defendant Reese had possession of the stolen objects and (2) Anderson would be a more credible witness than Washington, as Washington was serving a long prison term when he testified.[8]

---

[8] In support of this claim, petitioner provides the Affidavit of Bryant Anderson, which was likewise attached to a brief submitted to the Pennsylvania Superior Court. See Appendix to Petition for Writ of Habeas Corpus, at Exh. C. By way of this Affidavit, Anderson asserts that he and Jamal Washington robbed Mr. and Mrs. Lucas at gunpoint. Id. at ¶ 3. He goes on to explain that he sold Mr. Lucas's ring to Jeffrey Reese, petitioner's co-defendant, id.

While the trial court deemed this issue waived, it nonetheless engaged in a brief discussion of its merits and rejected it as baseless. The state court determined that Washington's testimony constituted a sufficient presentation of petitioner's defense that someone else had committed the crime, and that Anderson's testimony would have been merely cumulative. Moreover, the court highlighted the adamant nature of the victim's identification and the fact that the jury accepted the victim as credible. Therefore, it concluded that counsel could not be found ineffective for failing to call Bryant Anderson as a witness.

Considering this ruling under the deferential Williams standard, we must again, absent further evidentiary development, depart from the state court. It is well-established that an attorney must abide by a client's decision with respect to certain fundamental decisions, such as what plea to enter, whether a jury trial should be waived and whether the client will testify. Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1433 (3d Cir.), cert. denied, 519 U.S. 1020, 117 S. Ct. 538 (1996) (citing Model Rules of Professional Conduct, Proposed Rule 1.2(a) (Final Draft 1982)). "With the exception of these specified fundamental decisions, an attorney's duty is to take professional responsibility for the conduct of the case, after consulting with his client."

---

at ¶ 4, and let Reese drive Mr. Lucas's car, with petitioner in the passenger's seat. Id. at ¶¶ 5-8.

Jones v. Barnes, 463 U.S. 745, 753 n. 6, 103 S. Ct. 3308, 3313 (1983). Therefore, if a decision falls within the realm of "strategic decisions" to be made by the attorney, a reviewing court may find whatever decisions that attorney made "to be sufficiently deficient only if he either failed completely to consult with his client, or if the decision was itself inept or incapable of interpretation as sound." United States v. Narducci, 18 F. Supp.2d 481, 493 (E.D. Pa. 1997), reconsideration denied, Civ. A. No. 97-2812, 1998 WL 122237 (E.D. Pa. Mar. 9, 1998).

Decisions on which witnesses to call to testify are generally strategic decisions entrusted to counsel. United States v. Merlino, 2 F. Supp.2d 647, 662 (E.D. Pa. 1997); United States v. Griffin, Crim. A. No. 91-612, 1993 WL 34927, *5 (E.D. Pa. Feb. 9, 1993). Counsel need not call every suggested witness -- only those likely to assist their case. Merlino, 2 F. Supp.2d at 662. Hence, the decision of which witnesses to call "is precisely the type of strategic decision which the Court in Strickland held to be protected from second-guessing." Id. To prove that counsel was ineffective for failing to call a witness, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner a fair trial.

Commonwealth v. Holloway, 739 A. 2d 1039, 1048 (Pa. 1999), cited in, Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F. Supp.2d 451, 474 (M.D. Pa. 2000), aff'd, 275 F.3d 33 (3d Cir. 2001), cert. denied, 122 S. Ct. 1540, 2002 WL 549089 (April 15, 2002). "[D]efense counsel has no obligation to call a witness whose testimony would not have exculpated the petitioner." Marra v. Larkins, 111 F. Supp.2d 575, 585 n. 13 (E.D. Pa. 2000), aff'd, 2002 WL 1980413 (3d Cir. 2002), cert. denied, ___ S. Ct. ___, 2003 WL 99420 (Jan. 13, 2003).

In the case at bar, petitioner alleges that Bryant Anderson was known to counsel as a potential witness and was willing and available to testify for the defense that he and Washington were the ones who committed the crime. The state court did not disagree on these initial points, but declined to find that petitioner met the fifth Holloway prong of showing that the absence of the witness was so prejudicial as to have denied petitioner a fair trial. The state court did not, however, take the opportunity to conduct an evidentiary hearing with respect to the precise substance of Anderson's testimony and whether it would have, in fact, been cumulative of Washington's. As a result, it never addressed the fact that Anderson's testimony may have been able to explain facts that were devastating to Washington's credibility, such as how petitioner's co-defendant came into possession of the stolen goods. Indeed, provided what petitioner claims holds true,

Washington's testimony could have explained away much of the damaging evidence against petitioner and completely exculpated him from the crime. As the state court made no efforts to determine whether petitioner's allegations had factual merit, we cannot find that its rulings were neither contrary to nor an unreasonable application of federal law.

Certainly, in light of the evidence against petitioner, including the victims' unwavering and adamant identifications, and the fact that petitioner was found in the stolen vehicle, we are inclined to reject this claim as meritless. Unfortunately, however, we have neither evidentiary record of what Bryant Anderson would have testified to, nor any information regarding Attorney Cotter's decision not to call Anderson as a witness. Until we have such information, we have no means by which to determine whether Cotter's decision not to present Anderson was an objectively reasonable strategic measure under <u>Strickland</u> and <u>Holloway</u>. Consequently, we shall address this issue at the evidentiary hearing as well.

> d.  Trial Counsel Ineffectiveness for Failing to Request Trial Judge Recusal or, Alternatively, <u>Trial Judge Error in Failing to Recuse Himself</u>

Petitioner's third ineffectiveness claim asserts that trial counsel improperly failed to request trial judge recusal or, alternatively, that the trial judge erred in failing to recuse himself. Specifically, he contends that after the jury returned

the guilty verdicts and after petitioner and trial counsel left the courtroom, the trial judge summoned the victims, Mr. and Mrs. Lucas, to the front of the courtroom, wherein the following exchange occurred:

> THE COURT: File the necessary motions and protect his rights. All right Sheriff. They may be removed. Mr. and Mrs. Lucas, the Court regrets that this happened to you. I want to compliment you on your demeanor and testimony. It was quite compelling. And obviously, as a result thereof, these young men have been convicted. And I can assure you that they will not see the parking lot at Denny's Restaurant City Line Avenue for many, many, many years.
>
> MR. LUCAS: Thank you, sir. Thank you very much.
>
> THE COURT: And warden [Mrs. Lucas], you will not seem them in the Philadelphia Penal System either.
>
> MRS. LUCAS: That's fine.
>
> THE COURT: I thank you for participating. You of all people realize what we go through everyday.

(N.T. 2/5/93, at 99-101). Petitioner now maintains that Judge Watkin's prejudicial ex parte communication revealed that he jumped directly to sentencing immediately after the conviction and committed himself to a lengthy sentence before post-verdict motions were filed and before a pre-sentence investigation was conducted. Because counsel failed to move for the judge's recusal before the sentencing hearing, petitioner asserts that he was deprived of his Sixth Amendment right to effective assistance of counsel.

On review of this issue during PCRA proceedings, the Pennsylvania Superior Court cursorily dismissed this claim as

27

meritless.   It noted that the comments complained of were made after petitioner's conviction and, therefore, neither were ex parte nor could form the basis for recusal.[9]

        We likewise find no merit to this claim.  The comments at issue were, in fact, made post-conviction and outside the presence of the jury, thereby having no impact on petitioner's conviction.  Moreover, the judge's mere comments that petitioner will be put away for "many, many years" do not suggest that the judge was biased as to sentencing issues or that he was not going to abide by sentencing guidelines.   Rather, they simply reflect the trial judge's initial thoughts upon sitting through a full presentation of the evidence and a jury's conviction.   Moreover, the Superior Court, reviewing petitioner's direct appeal claim that his sentence was excessive, found no error in the trial judge's sentencing of petitioner.  Consequently, we must affirm the state courts' finding that the trial judge had no basis upon which to recuse himself.

        This conclusion compels us to likewise reject petitioner's allegation that trial counsel was ineffective for failing to move for recusal.   Under Strickland, counsel cannot be ineffective for failing to raise meritless claims.   Hackett v. Price, 212 F. Supp.2d 382, 389 (E.D. Pa. 2001).  As counsel had no

---

        [9] In the state courts, petitioner also argued that the trial judge should have recused himself due to his finding that removal of trial counsel was unwarranted.  He did not raise this argument in his habeas petition and, thus, it is not before us for review.

grounds upon which to seek the trial judge's recusal, any claim of
ineffectiveness due to that inaction must necessarily fail.

> e.  Trial Counsel Ineffectiveness For Failing to
>     File a Timely Motion To Permit the Petitioner
>     to Proceed Pro Se

In his final ineffectiveness allegation, petitioner
claims that trial counsel failed to file a timely motion to the
trial court to permit petitioner to proceed pro se. Specifically,
before trial, petitioner filed suit against counsel, John Cotter,
for his failure to retain an expert on eyewitness identification.
Counsel responded with an answer, new matter and counterclaim for
the amount of $100,000. Due to the conflict, counsel filed a
motion to be relieved. At the ensuing pretrial hearing, counsel
testified that he believed, based on applicable case law, that the
expert request would not be granted. (N.T. 11/23/92, at 4-5). The
court agreed and thus found that counsel acted properly and his
withdrawal was not necessary. Id. at 5-6. Petitioner thereafter
continued to request that counsel file a motion for petitioner to
proceed pro se, but to no avail. He thus proceeded through trial
Attorney Cotter's representation, but then filed a motion to
proceed pro se on the last day, which the court summarily denied.
Petitioner now contends that trial counsel should have informed the
court at least three weeks prior that he wanted to proceed pro se.

In its discussion of this precise claim, the PCRA court
found that, "[t]here is no case law, rule or logic to support

appellant's claim that an attorney is ineffective when he or she does not assert a criminal defendant's right to proceed *pro se*." Superior Court Opinion (2001), at 5-6. The court did, however, analyze this claim in conjunction with petitioner's other somewhat related claim involving trial court error in failing to allow counsel to withdraw, ultimately finding both meritless. Id. at 5.

Despite the contentious attorney-client history, trial counsel Cotter could only be viewed as following the mandates of the court in his representation of petitioner. After the pretrial hearing involving petitioner's suit and Mr. Cotter's motion to withdraw, the court determined that Mr. Cotter should continue with the case and informed petitioner that he could hire his own attorney if he wished, otherwise the one afforded him by the court would remain in place. (N.T. 11/23/92, at 6). Thus, counsel could have rightly assumed that he was to persist as petitioner's counsel. Filing a motion requesting that petitioner be able to proceed pro se would be at odds with this duty.

Moreover, petitioner fails to satisfy the second Strickland prong of proving prejudice. The trial judge was clearly disinclined to allow counsel's removal from the case prior to trial, implying that any motion to proceed pro se would have been unsuccessful. In addition, petitioner's own motion to proceed pro se, filed towards the end of his trial, was denied. Petitioner now stands hard-pressed to prove that, had counsel made a timely motion

30

as petitioner requested, such a motion would have been met with approval from the trial judge.  Accordingly, we cannot grant habeas relief on this claim.

      2.    Trial Court Error in Failing to Allow Withdrawal of Trial Counsel

Petitioner's final habeas claim acts as a corollary to the previous claim.  In particular, petitioner contends that the trial court erred in refusing to grant counsel's pre-trial motion to withdraw from representation of petitioner.  Upon review of the PCRA court's ruling on this issue under the <u>Williams</u> standard, we find that the state's decision was neither contrary to nor an unreasonable application of state law.

As noted above, sometime prior to trial, petitioner filed a civil action for malpractice against his counsel, to which counsel responded with a counterclaim.  In turn, counsel also sought leave to withdraw from representation of petitioner, stating that there was a conflict of interest in his representation and that he would be unable to effectively carry on the representation.  This conflict was thus disclosed to the court well prior to trial.  Accordingly, the trial court conducted a hearing on this matter and permitted petitioner to testify on the subject, at which time the following exchange occurred:

THE COURT:     What do you want?

DEFENDANT:     Well, I just want Mr. Cotter, in all due respect to the Court and to Mr. Cotter, I just wanted to possibly effectuate my

                          best interest.

    THE COURT:        Well, he is doing that.  He is one of the
                      best attorneys in Philadelphia County.
                      Any other county, for that matter,
                      Lieutenant Colonel in the Marines.
                      Father.  Husband.

    DEFENDANT:        If Mr. Cotter and I prior to coming here,
                      if Mr. Cotter and I could consult with
                      each other –

    THE COURT:        Well, sure you can consult.  Why not?
                      But I am not going to withdraw Mr. Cotter
                      from the case because you don't agree
                      with what he is doing.

(N.T. 11/23/92, at 6).

        Petitioner now argues that this exchange demonstrates

that the hearing was essentially a farce that failed to uncover the

fundamental conflict between counsel and client, resulting from a

malpractice lawsuit between them.  As a result, he contends that

the trial court neglected its duty to conduct a thorough search as

to the potential conflict of interest.  In turn, he avers that he

was subject to representation by an attorney whose performance fell

below minimum standards of competence.

        The PCRA court found that no error was made by the trial

judge's refusal of counsel's request to withdraw.  It ascertained

that petitioner's initial displeasure with counsel's failure to

hire a psychological expert on the unreliability of eyewitness

testimony was unfounded.  See Superior Court Opinion (2001), at 5.

Moreover, it determined that the mere existence of a "conflict"

over strategy did not automatically trigger counsel's removal.  Id.

                              32

at 5, n. 3.  Finally, it noted that the judge explicitly informed petitioner that he could hire his own attorney if he wished, but otherwise the one afforded to him would remain in place.  Id. at 5.

If a criminal defendant can show that his "counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance'", Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S. Ct. 1708, 1719 (1980)), "[t]he conflict itself demonstrate[s] a denial of the 'right to have effective assistance of counsel.'"  Cuyler, 446 U.S. at 349 (quoting Glasser v. United States, 315 U.S. 60, 76, 62 S. Ct. 457, 468 (1942)).  When a complete denial of counsel at a critical stage is shown, there is often no need to show prejudice, and the resulting trial is presumed to be unfair.  See Cuyler, 446 U.S. at 349-350; Strickland, 466 U.S. at 692.

Conflict of interest and divided loyalty situations can take many forms, and whether an actual conflict exists must be evaluated on the specific facts of each case.  "In general, a conflict exists when an attorney is placed in a situation conducive to divided loyalties, . . . and can include situations in which the caliber of an attorney's services 'may be substantially diluted.'" Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir. 1991) (internal quotations omitted).  A lawsuit pitting the defendant against his attorney suggests such divided loyalties and gives the attorney "a

personal interest in the way he conduct[s] [his client's] defense -- an interest independent of, and in some respects in conflict with, [his client's] interest in obtaining a judgment of acquittal." Lockhart, 923 F.2d at 1321 (quoting Douglas v. United States, 488 A.2d 121, 136 (D.C. App. 1985) (where defendant lodged complaint against attorney with Bar Counsel claiming ineffective assistance of counsel at trial, the attorney naturally might be apprehensive about his performance, and would have an "inordinate interest in conducting the defense in a manner calculated to minimize any opportunity for post hoc criticism of his efforts.")); see, e.g., Mathis v. Hood, 937 F.2d 790, 795 (2d Cir. 1991) (finding actual conflict of interest in lawyer's representation of defendant during appeal where defendant filed a grievance with disciplinary committee prior to appeal due to attorney's delay in filing appellate brief); Lockhart, 923 F.2d at 1320-1321 (8th Cir. 1991) (where plaintiff informed trial judge that there was complete breakdown in communications with attorney and where he had pending lawsuit against attorney, conflict existed); United States v. Hurt, 543 F.2d 162, 166 (D.C. Cir. 1976) (where trial counsel sued appellate counsel for libel based on appellant's claim that trial counsel was ineffective, conflict of interest existed between appellant and appellate counsel); see also United States v. Moore, 159 F.3d 1154, 1158 (9th Cir. 1998) (noting that a lawsuit between defendant and counsel can potentially create an actual conflict of

34

interest).  "[A] judge conducting a trial must - despite his suspicions as to the defendant's motives - at all times make certain that he has protected the defendant's constitutional rights." United States v. Welty, 674 F.2d 185, 194 (3d Cir. 1982). Indeed, if the defendant or his attorney raises the issue or the trial judge otherwise knows or reasonably should know of the alleged conflict of interest, the judge must inquire adequately into the potential conflict.[10] Holloway v. Arkansas, 435 U.S. 475, 484-487, 98 S. Ct. 1173, 1178-1189 (1978).

On the other hand, a "patently frivolous lawsuit brought by a defendant against his or her counsel may not, alone, constitute cause for appointment of new counsel." Lockhart, 923 F.2d at 1321, n. 11.  Trial judges must remain cautious with defendants who seek to employ complaints about counsel as dilatory tactics or for some other invidious motive.  Welty, 674 F.2d at 193-94.  "A frivolous complaint against an attorney, or one filed for purposes of delay, or even one filed for the purpose of obtaining new counsel, would not create a conflict of interest warranting habeas relief . . ." Mathis v. Hood, 937 F.2d 790, 796 (2d Cir. 1991).

The record before us reveals that petitioner's lawsuit

---

[10]  Notably, even where a defendant does not object at trial to an attorney's representation, a Sixth Amendment violation is established if a convicted defendant later demonstrates that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler, 446 U.S. at 348.

was perhaps the very type of frivolous complaint lodged for purposes of delay. Petitioner's initial lawsuit against his attorney alleged that counsel committed a tortious act for failing to hire an expert in cross-racial identification tendencies, even though both the victims and the petitioner were from the same race. See Appendix to Petition for Writ of Habeas Corpus, at Exh. A. During the November 23, 1992 hearing on counsel's motion to withdraw, the trial court specifically addressed the pending lawsuit:

> MR. COTTER:    Okay, Judge. My position on that, Judge, even though I would agree that the identification testimony is key, would be key at trial, I don't think there is any reason to get an identification witness expert. I don't think it would be granted, and I think it would be frivolous, and we have a dispute over that, and that's what he sued me about, for not getting an expert.

> THE COURT:    What is the expert about?

> MR. COTTER:    It would be an expert on identification testimony, a psychologist that would testify that its difficult to make –

> THE COURT:    Get him any expert he wants. The taxpayers will pay for it.

> MR. COTTER:    Judge, I don't think I would get the expert because, if I may, Judge, this is – it's not two different races. The victims are the same race as my client.

> THE COURT:    What does that have to do with it?

> MR. COTTER:    I'm looking at it, from the previous cases –

```
THE COURT:      Of course, I would deny your request for
                an expert witness on identification.

MR. COTTER:     I think if it was different races –

THE COURT:      I'm agreeing with you.  That is not a reason
                to sue you.
```

(N.T. 11/23/92, pp. 4-5).  Ultimately, the trial judge determined that this lawsuit had no arguable merit, was patently frivolous and was a device designed purely to stall the trial.  (N.T. 11/23/92, at 7).

Petitioner attempts to counter this finding by contending that the "conflict of interest" necessitating counsel's withdrawal stemmed, not from their differences of opinion over trial strategy, but rather over counsel's "ill will toward Petitioner because of the malpractice claim."  See Traverse at p. 2.  Specifically, he contends that Attorney Cotter filed a counterclaim against petitioner alleging that, as a result of petitioner's complaint, he would suffer business expenses, loss of income, emotional distress and anxiety.  This countersuit, according to petitioner, reflected that counsel likely acted in a manner to undermine petitioner's defense at trial in order to prove that it was the criminal charges responsible for petitioner's imprisonment, not his malfeasance.

What petitioner overlooks, however, is that the legitimacy of the conflict is inextricably intertwined with the triviality of the original complaint.  The counterclaim involved nothing more than boilerplate responsive pleading in reply to what

37

was clearly a frivolous lawsuit.[11]  The mere fact that counsel was forced, by the nature of the suit, to reply with such a filing does not immediately create a conflict of interest.  Moreover, notwithstanding his suspicions as to petitioner's motives, the trial judge inquired into the nature of the lawsuit and the potential conflict between counsel and client.  The judge found no such actual conflict and aptly noted that "[i]f every defendant in the jailhouse figures out that they can get continuances and new lawyers by filing a civil lawsuit, image that, the lawsuits would be sailing down here by the truck load."  (N.T. 11/23/92, at 7). Having been present for the testimony of both petitioner and attorney Cotter on this precise issue of conflict, the trial judge sat in the best position to judge the verity of any alleged conflict of interest.  Granting the required deference to this determination, pursuant to 28 U.S.C. § 2254(e)(1), we now find no

---

[11] The Counterclaim consisted of four paragraphs, as follows:

24.    The Defendant incorporates by references all of the Answers to Paragraphs 1 through 20 and Paragraphs 21 through 23 of New Matter as though expressly set forth herein.

25.    As a result of Plaintiff's Complaint Defendant has an will suffer business expenses, loss of income, emotional distress, and anxiety.

26.    The Defendant has and will suffer damage in an amount of $100,000.

WHEREFORE, The Defendant requests damages against the Plaintiff in an amount of $100,000.

Petitioner's Traverse, at Exh. P-1.

basis upon which to depart from the state courts' ruling.[12]

IV.   CONCLUSION

      Having thoroughly reviewed the Petition for Writ of Habeas Corpus pending before the Court, we find that an evidentiary hearing on two of the issues raised is warranted to determine whether they constitute cause to excuse the procedural default. Consequently, we recommend that a hearing be held with respect to petitioner's claims of (1) appellate counsel ineffectiveness for failing to preserve the issue of trial counsel ineffectiveness for failure to properly advise petitioner regarding his possible sentence and plea agreement; (2) appellate counsel ineffectiveness for failing to preserve the issue of trial counsel ineffectiveness for not presenting Bryant Anderson as a witness.  With respect to the remainder of the petition, we recommend that it be denied and dismissed.

      Therefore, I make the following:

---

[12] Petitioner argues that there were several instances where the conflict between he and counsel impacted his trial including (1) trial counsel's refusal to call petitioner as a witness; (2) trial counsel failure to advise petitioner of his sentencing exposure; and (3) trial counsel failure to inform the court before trial that petitioner desired to proceed pro se. With respect to the first claim, petitioner never raised this as a habeas issue and has, thus, not established that counsel's failure to call him as a witness constituted ineffective assistance.  With respect to the third issue, we have already found that this claim had no merit.  As for the second issue, the Court will be reaching the merits following an evidentiary hearing.

<u>RECOMMENDATION</u>

AND NOW, this            day of *January*, 2003, IT IS RESPECTFULLY RECOMMENDED that an evidentiary hearing be held on the issues of (1) appellate counsel ineffectiveness for failing to preserve the issue of trial counsel ineffectiveness for failure to properly advise petitioner regarding his possible sentence and plea agreement and (2) appellate counsel ineffectiveness for failing to preserve the issue of trial counsel ineffectiveness for not presenting Bryant Anderson as a witness. IT IS FURTHER RECOMMENDED that the remainder the Petition for Writ of Habeas Corpus be DENIED AND DISMISSED.

_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE